# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FADI ALKASAJI** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-13** |
| **JAMES RIVER INSURANCE COMPANY** | **SECTION I** |

## <u>ORDER & REASONS</u>

Before the Court is defendant James River Insurance Company's ("James River") motion[1] to dismiss plaintiff Fadi Alkasaji's ("Alkasaji") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## I.

Accepting all of the factual assertions in Alkasaji's complaint as true, they are as follows: this action arises from a motor vehicle collision between Alkasaji and uninsured motorist Giovanna Matias ("Matias") that occurred on October 30, 2016 in New Orleans, Louisiana.[2] At the time of the collision, Alkasaji was a rideshare driver for Uber, en route to pick up a passenger at the intersection of Poydras Street and the Mississippi River.[3] As Alkasaji approached the intersection of Poydras Street and Magazine Street to cross with a green light, Matias, who was driving in the opposite

---

[1] R. Doc. No. 7.
[2] R. Doc. No. 1-2, at 6 ¶ 2–7 ¶ 4.
[3] *Id.*

direction, executed an illegal left turn and crashed into Alkasaji's vehicle.[4] Alkasaji alleges that the collision caused him serious injuries and significant property damage to his vehicle.[5]

At the time of the collision, Alkasaji was insured by James River, which provided coverage that included uninsured motorist ("UM") claims.[6] Alkasaji asserts that he timely provided prompt notice of the collision to James River and that James River proceeded with a full investigation of his claim.[7] James River's investigation confirmed that Matias was uninsured at the time of the collision; on September 1, 2017, James River confirmed that it would not seek subrogation rights.[8]

On October 9, 2017, Alkasaji submitted his initial proof of loss to James River and asked James River to "tender general and special damages" within thirty days.[9] In response, on November 1, 2017, a James River claims examiner called Alkasaji's counsel, notifying him that Alkasaji's UM claim had been evaluated at $69,117.60.[10] The claims examiner emailed Alkasaji later that day, stating that James River offered $69,117.60 for his UM claim.[11] The email also stated, "Please note our release

---

[4] *Id.* at 7 ¶ 3. According to Alkasaji, the New Orleans Police Department investigated the collision and issued a citation to Matias for failure in yield. *Id.* at 7 ¶ 4.

[5] *Id.* at 7 ¶ 3.

[6] *Id.* at 9 ¶ 10. Pursuant to La. Stat. Ann. § 45:201.6, which specifies insurance requirements that transportation network companies such as Uber must maintain on behalf of their drivers, Uber procured insurance coverage from James River that covered Alkasaji. *Id.* at 8–9 ¶ 9.

[7] *Id.* at 9 ¶ 12.

[8] *Id.* at 9 ¶ 13.

[9] *Id.* at 10 ¶ 15. Alkasaji asserts that Matias was solely at fault for the collision. *Id.* at 9 ¶ 11.

[10] *Id.* at 10 ¶ 16.

[11] *Id.*

includes a confidentiality and non-disparagement agreement."[12] Alkasaji contends that James River's November 1, 2017 offer, which was allegedly conditioned upon payment in final settlement of Alkasaji's entire past, present, and future UM claim, as well as confidentiality and non-disparagement provisions, was in violation of Louisiana law and *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085 (La. 1985).[13]

Upon receiving the November 1, 2017 email, counsel for Alkasaji called James River that same day to inform James River of the applicable Louisiana law with respect to unconditional tenders from UM carriers.[14] The next day, November 2, 2017, James River issued a check to Alkasaji for $69,117.60, which was received as an unconditional tender on November 6, 2017.[15]

On December 17, 2018, Alkasaji submitted a supplemental proof of loss, including new medical records and additional medical expenses, and he requested a supplemental tender for special and general damages within thirty days.[16] James River subsequently issued a second unconditional tender of $74,767.60 on January

---

[12] *Id*. at 10 ¶ 17.
[13] *See id*. at 10–11 ¶ 18. Pursuant to La. Stat. Ann. § 22:1892, an insurer must pay "the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." In *McDill*, the Louisiana Supreme Court explained that in order to establish a "satisfactory proof of loss" of a UM claim, the insured must establish "that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages." So. 2d at 1089. Alkasaji claims that James River's November 1, 2017 offer violated its obligation to issue an unconditional tender for his UM claim. *See* R. Doc. No. 1-2, at 10–11 ¶ 18.
[14] R. Doc. No. 1-2, at 10–11.
[15] *Id*. at 11 ¶ 18.
[16] *Id*. at 11 ¶ 19.

10, 2019.[17] On January 24, 2019, counsel for Alkasaji informed James River that this tender was insufficient, but James River allegedly failed to respond.[18]

Alkasaji submitted a third proof of loss that included additional medical reports and collision-related medical expenses on May 20, 2019.[19] James River issued a third unconditional tender of $83,510.58 on June 13, 2019.[20] Alkasaji claims that this tender was still insufficient.[21]

On October 31, 2019, Alkasaji filed suit against James River in the Civil District Court for the Parish of Orleans, State of Louisiana.[22] The action was removed to this Court on January 3, 2020.[23] Alkasaji alleges that James River is liable for underpayment of his UM claim,[24] and that James River violated its duty of good faith and fair dealing in connection with its administering of his claim pursuant to La. Stat. Ann. §§ 22:1892, 1973.[25] Alkasaji also claims that James River is liable for damages or losses caused by James River's use of any unfair or deceptive method, act,

---

[17] *Id.*
[18] *Id.* at 12 ¶ 20.
[19] *Id.* at 12 ¶ 21.
[20] *Id.* at 12 ¶¶ 21, 23.
[21] *Id.* at 12 ¶ 21.
[22] *See* R. Doc. No. 1-2.
[23] R. Doc. No. 1.
[24] R. Doc. No. 1-2, at 12 ¶¶ 20–24.
[25] *Id.* at 14 ¶ 29, 15 ¶ 31. Pursuant to La. Stat. Ann. § 22:1973, an insurer "owes to his insured a duty of good faith and fair dealing." The law imposes on the insurer an "affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." La. Stat. Ann. § 22:1973(A).

or practice declared unlawful under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Stat. Ann. § 51:1405 ("LUTPA").[26]

## II.

### i.  Motion to Dismiss

In a removed case where the defendant challenges the complaint in a motion to dismiss for failure to state a claim, federal pleading standards control. *Peña v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

---

[26] R. Doc. No. 1-2, at 16 ¶ 32.

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012). Furthermore, on a Rule 12(b)(6) motion, the Court generally must limit itself to the contents of the pleadings, including attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). "If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) ("[A] complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling.").

### ii.     Prescription of Alkasaji's UM Claim

Under La. Stat. Ann. § 9:5629, "[a]ctions for the recovery of damages sustained in motor vehicle accidents brought pursuant to uninsured motorist provisions in motor vehicle insurance policies are prescribed by two years reckoning from the date of the accident in which the damage was sustained." However, "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." *Mallett v. McNeal*, 2005-2289, p. 5 (La. 10/17/06), 939 So.

2d 1254, 1258 (citing La. Civ. Code Ann. art. 3464). "An uninsured/underinsured motorist carrier's unconditional payment of monies to its insured pursuant to [La. Stat. Ann. § 22:1892] and *McDill*, constitutes an acknowledgment sufficient to interrupt prescription." *Demma v. Auto. Club Inter-Ins. Exch.*, 2008-2810, p. 15 (La. 6/26/09), 15 So. 3d 95, 105 (internal citation omitted). Prescription commences to run anew from the last day of interruption. La. Civ. Code Ann. art. 3466; *Babin v. Babin*, 08-776, p. 3 (La. App. 5 Cir. 3/10/09), 10 So. 3d 784, 786, *writ denied*, 2009-0813 (La. 6/19/09), 10 So. 3d 735.

"The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff." *Mallett*, 939 So. 2d at 1258.

James River argues that Alkasaji's UM claim is prescribed because it was not filed within two years of the collision, which occurred on October 30, 2016.[27] However, accepting the allegations in Alkasaji's complaint as true, James River's third unconditional tender of UM benefits on June 13, 2019 constituted an acknowledgment sufficient to interrupt prescription.[28] *See Demma*, 15 So. 3d at 105. Therefore, the prescriptive period for Alkasaji's UM claim commenced anew on June 13, 2019, and Alkasaji had until June 13, 2021 to file his claim. Because it was filed on October 31, 2019, Alkasaji's UM claim is not prescribed.

---

[27] *See* R. Doc. No. 7-1, at 3.

[28] James River does not dispute that it issued an unconditional tender on June 13, 2019 or assert that this tender did not constitute an acknowledgment of liability sufficient to interrupt prescription.

### iii.    Prescription of First-Party Bad Faith Claim

An insured's claim of bad faith by his insurer is a personal action that is subject to a ten-year prescriptive period. *Smith v. Citadel Ins. Co.*, 2019-00052, p. 10 (La. 10/22/19), 285 So. 3d 1062, 1069. Although prior jurisprudence from Louisiana courts and federal courts applying Louisiana law was divided as to whether a one-year or ten-year prescriptive period applied to such claims,[29] recently, the Louisiana Supreme Court expressly held in *Smith v. Citadel Insurance Co.*, that "first-party bad faith claims against an insurer are governed by the ten-year prescriptive period set forth in [La. Civ. Code Ann.] art. 3499." 285 So. 3d at 1073.[30]

Alkasaji claims that James River failed to administer his documented UM claim in good faith.[31] As stated previously, Alkasaji's collision occurred on October 30, 2016, and he filed suit against James River on October 31, 2019.[32] With no discussion of the Louisiana Supreme Court's decision in *Smith v. Citadel Insurance Co.*, James River argues that a one-year prescriptive period applies to Alkasaji's bad faith claim.[33] However, as stated, *Smith* soundly holds that such claims are subject

---

[29] *See Naz, LLC v. United Nat'l Ins. Co.*, No. 17-5697, 2018 WL 3997299, at *3 (E.D. La. Aug. 21, 2018) (Milazzo, J.), *aff'd sub nom. NAZ, L.L.C. v. United Nat'l Ins. Co.*, 779 F. App'x 200 (5th Cir. 2019) (noting that "Louisiana law is unsettled regarding whether an insured's claim for an insurer's bad faith are [sic] subject to a prescriptive period of one or ten years . . . ").

[30] La. Civ. Code Ann. art. 3499 provides that "a personal action is subject to a liberative prescription of ten years."

[31] R. Doc. No. 1-2, at 15 ¶ 31.

[32] *See* R. Doc. No. 1-2.

[33] *See* R. Doc. No. 7-1, at 5.

to a ten-year prescriptive period. *Id.* Therefore, Alkasaji's bad faith claim against James River is not prescribed.

*iv.*     *Prescription of LUTPA Claim*

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. § 51:1405(A). To establish a LUTPA claim, the plaintiff must show that the alleged conduct "'offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *K&F Rest. Holdings, Ltd. v. Rouse*, No. 18-30953, 2020 WL 502620, at *2 (5th Cir. Jan. 30, 2020) (quoting *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582, p. 21 (La. 5/7/14), 144 So. 3d 1011, 1025). "'[T]he range of prohibited practices under LUTPA is extremely narrow,' so 'only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.'" *Id.* (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633, p. 11 (La. 4/23/10), 35 So. 3d 1053, 1060).

The law provides for a private right of action to recover damages suffered as a result of a LUTPA violation. *See* La. Stat. Ann. § 51:1409(A). Such actions are subject to a liberative prescription of one year that commences from the time of the transaction or act that gave rise to the right of action.[34] La. Stat. Ann. § 51:1409(E); *Caldwell Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co.*, 781 F. App'x 289, 293 (5th Cir. 2019).

---

[34] As defined in La. Civ. Code Ann. art. 3447, liberative prescription is "a mode of barring of actions as a result of inaction for a period of time."

The parties disagree as to the date when the prescriptive period for Alkasaji's LUTPA claim commenced. James River argues that prescription started to run on November 1, 2017 when James River offered to settle Alkasaji's claim subject to a confidentiality and non-disparagement agreement.[35] Alkasaji contends that the prescriptive period for his LUTPA claim began on June 13, 2019 when James River allegedly offered an insufficient tender.[36] However, the June 13, 2019 offer was not conditioned on any confidentiality or non-disparagement provisions, and Alkasaji's complaint does not provide any factual allegations to support a claim that the June 13, 2019 offer would constitute a violation of LUTPA.[37] Alkasaji's speculative argument that the June 13, 2019 tender "suggest[s]" improper conduct in violation of LUTPA is unavailing. Therefore, because Alkasaji did not file his LUTPA claim until October 31, 2019, this claim is prescribed. *See* La. Stat. Ann. § 51:1409(E).

---

[35] R. Doc. No. 7-1, at 6.

[36] R. Doc. No. 12, at 13.

[37] With respect to his LUTPA claim, Alkasaji's complaint only cites the November 1, 2017 offer as an "illustrat[ion]" of James River's allegedly unlawful behavior. As stated in his complaint:

> Plaintiff has filed this suit because James River has failed or refused to properly pay his claim, without good cause. Based upon information and belief, as illustrated by James River's behavior on November 1, 2017, which inappropriately sought a final release with confidentiality and a non-disparagement agreement, rather than tendering the funds that were owed, James River has deliberately underpaid plaintiff's claims in violation of Louisiana law, by engaging in a calculated plan to force the plaintiff and even plaintiff's attorney, to sign a general release with indemnity, confidentiality, and non-disparagement, both contrary to law and/or the rules of professional conduct for Louisiana attorneys, before James River will agree to pay the plaintiff for the fair value of his claim.

R. Doc. No. 1-2, at 13 ¶ 25.

## IV.

For the foregoing reasons,

**IT IS ORDERED** that James River's motion to dismiss Alkasaji's UM claim and bad-faith claim is **DENIED**.

**IT IS FURTHER ORDERED** that James River's motion to dismiss Alkasaji's LUTPA claim is **GRANTED** and that Alkasaji's LUTPA claim is **DISMISSED**.

New Orleans, Louisiana, February 26, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**